UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| OSCAR IRAHETA ROSALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00386-JPH-MJD |
| | ) | |
| BYRD, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Oscar Rosales is a prisoner at New Castle Correctional Facility. This civil rights action concerns allegations that he was denied proper medical care following knee replacement surgery in 2018 while he was incarcerated at Wabash Valley Correctional Facility (WVCF).

The defendants, Dr. Byrd and Nurse A. Conner, have moved for summary judgment. The Court **grants** summary judgment for Dr. Byrd and **denies** summary judgment for Nurse Conner.

**I. Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences

in the non-movant's favor. *See Barbera v. Pearson Education, Inc.*, 906 F.3d 621, 628 (7th Cir. 2018).

When a party moving for summary judgment asserts facts and supports them with admissible evidence, the court treats those facts as admitted without controversy unless the non-movant specifically controverts them with admissible evidence, shows the movant's assertions are not supported by admissible evidence, or demonstrates that the factual record leaves a material factual dispute. S.D. Ind. L.R. 56-1(f)(1). Conversely, when the non-movant asserts facts and supports them with admissible evidence, the court treats those facts as admitted without controversy. S.D. Ind. L.R. 56-1(f)(2).

## II. Facts

On May 7, 2018, Dr. Kurt Madsen completed total replacement surgery on Mr. Rosales's left knee at Terre Haute Regional Hospital (THRH). Dkt. 60-1. Dr. Madsen directed that Mr. Rosales return in one-to-two weeks for a follow-up examination. Dkt. 60-2 at 4.

On May 14, 2018, Mr. Rosales met with Dr. Samuel Byrd in the infirmary at WVCF. Dkt. 28-3 at 1. He complained of knee pain despite receiving pain medication. *Id.* Dr. Byrd advised Mr. Rosales to walk using a walker and directed a nurse to inquire with Dr. Madsen as to whether Mr. Rosales should use a continuous passive motion (CPM) machine or knee brace during his recovery. *Id.*

Mr. Rosales met with Dr. Byrd in the infirmary again on May 21. Dkt. 28-5. Dr. Byrd had not received a response yet from Dr. Madsen regarding the knee brace or CPM machine. *Id.* Mr. Rosales continued to complain of knee pain despite medication and reported feeling numbness around his incision. *Id.* Dr. Byrd again advised Mr. Rosales to walk using the walker. *Id.* The

2

following day, Dr. Madsen responded that Mr. Rosales should use a CPM machine for two weeks. Dkt. 28-6.

Dr. Byrd examined Mr. Rosales again in the infirmary on May 29. Dkt. 28-8. They discussed Mr. Rosales's use of the CPM machine, and Dr. Byrd found that Mr. Rosales was extending his knee beyond the limit Dr. Madsen prescribed. *Id.* at 1. Mr. Rosales reported continued knee pain, and Dr. Byrd extended his pain medication prescriptions. *Id.* Dr. Byrd noted that Mr. Rosales's follow-up appointment with Dr. Madsen was scheduled and that he was awaiting Dr. Madsen's recommendations "as we will adhere to all of them." *Id.* at 2.

Mr. Rosales met with Dr. Madsen at THRH the following day, May 30. Dkt. 60-3. Dr. Madsen observed that Mr. Rosales's wound was stable and that he could fully extend his left knee. *Id.* Dr. Madsen directed that Mr. Rosales stop using the CPM machine. *Id.* He also directed that Mr. Rosales return to THRH for a single physical therapy appointment to receive gait training and a home exercise program. *Id.* Dr. Byrd updated Mr. Rosales's records on June 1, 2018, to note Dr. Madsen's recommendation for a physical therapy appointment. Dkt. 28-9. This physical therapy visit is the focus of Mr. Rosales's lawsuit.

On June 6, Dr. Byrd examined Mr. Rosales again. Dkt. 28-10. According to Dr. Byrd's notes, Mr. Rosales reported that he was "doing reasonably well" and had "no concerns or setbacks." *Id.* at 1. Dr. Byrd noted that Mr. Rosales had an appointment scheduled for physical therapy. *Id.* at 1. However, no document in the record indicates that an appointment had been scheduled at that time.

Seven weeks later, Mr. Rosales still had not been to physical therapy or received an exercise plan as Dr. Madsen directed. On July 27, he submitted a request for healthcare noting Dr. Madsen's orders and asking to be sent for his prescribed physical therapy. Dkt. 57 at 3. The

following day, Nurse A. Conner issued the following response: "No orders for outside PT. Exercises sent." *Id.*

Dr. Byrd examined Mr. Rosales again on August 15, 2018. Dkt. 28-11. Mr. Rosales reported pain and instability in his knee and questioned whether the "replacement may be malfunctioning." *Id.* at 1. Mr. Rosales noted that he had not been sent for physical therapy as directed. *Id.* Dr. Byrd acknowledged that Dr. Madsen called for Mr. Rosales to receive physical therapy and that it had not been arranged. *Id.*

A week later, Nurse Wright requested that Mr. Rosales be scheduled for physical therapy at THRH. Dkt. 28-12. Her notes state, "This OPR was lost somehow and not reviewed. Requesting 1 visit to PT per request of surgeon for HEP." *Id.* at 2. Mr. Rosales finally went to THRH for physical therapy on September 11, 2018. Dkt. 28-13.

### III. Analysis

In screening Mr. Rosales's complaint, the Court identified the following claims:

> Construed liberally, the complaint alleges facts supporting a reasonable inference that Nurse Conner and Dr. Byrd knew Mr. Rosales's surgeon had ordered physical therapy, that they had authority to arrange for him to be sent for physical therapy, and that they chose not to do so. These allegations support a plausible claim that Nurse Conner and Dr. Byrd were deliberately indifferent to Mr. Rosales's serious medical need in violation of his Eighth Amendment rights. *E.g.*, *Zaya v. Sood*, 836 F.3d 800, 806 (7th Cir. 2016) ("A jury can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist."). This action **shall proceed** with claims against Nurse Conner and Dr. Byrd pursuant to 42 U.S.C. § 1983 and the Eighth Amendment.

Dkt. 18 at 2–3.

"To determine if the Eighth Amendment has been violated in the prison medical context," the Court ordinarily must "perform a two-step analysis, first examining whether" the plaintiff "suffered from an objectively serious medical condition, and then determining whether" his medical care providers were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d

4

722, 727–28 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Here, the defendants concede for purposes of summary judgment that Mr. Rosales faced an objectively serious medical condition, dkt. 51 at 10, so the Court need only address deliberate indifference.

### A.     Deliberate Indifference

"As its name implies, deliberate indifference requires 'more than negligence and approaches intentional wrongdoing.'" *Goodloe v. Sood*, 947 F.3d 1030 (7th Cir. 2020) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Rather, the evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Goodloe*, 947 F.3d at 1030.

In *Petties*, 836 F.3d 722, the Seventh Circuit listed several ways a prisoner may show that a provider was deliberately indifferent to his serious medical needs. These include showing that the defendant has:

- rendered a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Id.* at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- persisted "in a course of treatment known to be ineffective." *Id.* at 729–730.

- chosen "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effected "an inexplicable delay in treatment which serves no penological interest." *Id.*

Perhaps most relevant to this case, a court may find deliberate indifference where "a doctor refuses to take instructions from a specialist." *Id.* at 729. "A jury can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist." *Zaya*, 836 F.3d at 806. "Instructions from a specialist are evidence that the defendant knew a particular course of treatment

was recommended by at least one other medical professional *at the time* the defendant chose not to provide that treatment." *Id.* (emphasis in original).

"A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if 'the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016).

**B.   Analysis**

Mr. Rosales alleges that Dr. Byrd and Nurse Conner were deliberately indifferent to his serious medical needs when they failed to make sure that he received physical therapy as ordered by Dr. Madsen as part of his post-operative recovery.

**1.   Dr. Byrd**

Dr. Byrd was undoubtedly aware of Mr. Rosales's need for physical therapy. However, no evidence indicates that he refused to follow or deliberately disregarded Dr. Madsen's instructions.

Dr. Byrd updated Mr. Rosales's records on June 1, 2018, to reflect that Dr. Madsen directed that Mr. Rosales receive one physical therapy appointment. Dkt. 28-9 at 2. When Dr. Byrd examined Mr. Rosales on June 6, he noted that Mr. Rosales had an appointment scheduled for physical therapy. Dkt. 28-10 at 1. No evidence clarifies why or how that appointment was not actually scheduled. Regardless, on August 15 Dr. Byrd learned that Mr. Rosales had not yet had physical therapy and no appointment was scheduled. Within a week, a physical therapy

6

appointment was scheduled, and Mr. Rosales received physical therapy on September 11. Dkts. 28-11 at 1, 28-12, 28-13.

No designated evidence shows that Dr. Byrd deliberately refused or ignored Dr. Madsen's direction that Mr. Rosales receive physical therapy. *See Petties*, 836 F.3d at 729; *Zaya*, 836 F.3d at 806. The mere fact that the physical therapy appointment was not scheduled when it was supposed to have been does not show deliberate indifference. Accordingly, the defendants' motion for summary judgment is **granted** as to Dr. Byrd.

### 2. Nurse Conner

Nurse Conner was also made aware of Mr. Rosales's need for physical therapy. A jury could find from the evidence that Nurse Conner deliberately ignored Dr. Madsen's order and was indifferent to Mr. Rosales's need for physical therapy.

Mr. Rosales completed his request for healthcare on July 26, 2018. Dkt. 57 at 3. The request stated:

> I am supposed to go see a physical therapist for my surgically rebuilt knee. Dr. Byrd even said I was supposed to be sent out last month. Can everyone get on the same page? All these different failures in medical care is starting to add up to deliberate indifference. Please do what is right. Dr. Madsen told me after my surgery he wanted to see me for physical therapy. No one gave me P.T. papers for in my cell.

Dkt. 57 at 3.

Nurse Conner responded a day later stating, "No orders for outside PT. Exercises sent." *Id.* While it's not clear what this meant, defendants have not designated evidence that provides additional context or meaning. *See* S.D. Ind. L.R. 56-1(e), (f). Nurse Conner's response to the request for healthcare demonstrates Nurse Conner knew at least that Mr. Rosales claimed to have been prescribed physical therapy for a "surgically rebuilt knee" and that Dr. Byrd said he was

7

supposed to have had physical therapy last month. Dkt. 57 at 3. Defendants have not designated evidence showing that Nurse Conner took appropriate action, such as following up with Dr. Byrd or otherwise trying to determine whether Dr. Madsen had ordered physical therapy, in response to this information. Despite Nurse Conner's knowledge of Mr. Rosales's unfulfilled need for physical therapy, Dr. Byrd did not see Mr. Rosales until almost three weeks later, August 15, 2018. Dkt. 28-11. A reasonable jury could conclude from these facts that Nurse Conner was deliberately indifferent to Mr. Rosales's serious medical condition.[1] *Petties*, 836 F.3d at 730; *Zaya*, 836 F.3d at 806.

Accordingly, the defendants' motion for summary judgment is **denied** as to Nurse Conner.

### IV. Conclusion and Further Proceedings

The defendants' motion for summary judgment, dkt. [50], is **granted in part** and **denied in part**. The motion is **granted** as to claims against Dr. Byrd. Dr. Byrd is **dismissed** from the action **with prejudice**, and the **clerk is directed** to terminate him as a party. No partial final judgment shall enter at this time. The motion is **denied** as to Mr. Rosales's Eighth Amendment claim against Nurse Conner. This claim will be resolved by settlement or trial.

The Court *sua sponte* reconsiders its denial of Mr. Rosales's motion for appointment of counsel, dkt. 49. Mr. Rosales's motion, dkt. [36], is **granted** insofar as the Court will attempt to recruit counsel to assist Mr. Rosales through the entry of final judgment in this matter. If Mr. Rosales wishes to proceed without counsel, he shall notify the Court. The Court will issue an order directing further proceedings after recruited counsel has appeared for Mr. Rosales.

---

[1] The defendants' argument that Nurse Conner is entitled to summary judgment because she cannot "refer" patients to receive physical therapy, Dkt. 58 at ¶ 7, does not change the outcome. Dr. Madsen had already made a referral for physical therapy. Nurse Conner simply needed to ensure that steps were taken to make the referral happen. There's no designated evidence showing that something prevented her from following up with Dr. Byrd, or taking other reasonable steps, to make sure a physical therapy appointment was scheduled.

**SO ORDERED.**

Date: 11/20/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

9

Distribution:

OSCAR IRAHETA ROSALES
194882
NEW CASTLE – CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
PO Box A
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jarod Zimmerman
KATZ  KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com